**CALIFORNIA MERCURY RECORD DIS-
TRIBUTORS, INC., Appellant,**

v.

**A. K. PHELPS, as Trustee in Bankruptcy
of Audio Fidelity, Inc., Appellee.**

**No. 16886.**

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1960.

Rehearing Denied Nov. 17, 1960.

262

Adelman & Schwartz, Beverly Hills, Cal., for appellant.

Haskell H. Grodberg, Los Angeles, Cal., for appellee.

Before STEPHENS and BARNES, Circuit Judges, and KILKENNY, District Judge.

BARNES, Circuit Judge.

This case was initiated by the trustee in bankruptcy, Phelps, to set aside and prevent a preferential transfer. California Mercury Record Distributors, Inc., (hereinafter sometimes called Mercury) answered, and counterclaimed for a balance due on an account with the bank-

rupt. The district court gave judgment for the plaintiff trustee for $1,436.42, and held that no debt was due and owing to Mercury from the bankrupt. From this judgment Mercury appeals. This court has jurisdiction on appeal. 28 U.S.C. § 1291.

The bankrupt was a record retailer which sold in a market where it gave a twenty per cent discount on all records sold. Appellant Mercury is a wholesale distributing house. Until September 1957, Mercury sold records on open account to the bankrupt, at which time the account of bankrupt was substantially in arrears. At that time an arrangement was made whereby the arrearages could be paid off at the rate of $50.00 per week.

Mercury had a rule whereunder accounts which were more than two months in arrears could receive no further credit, and any further transactions were to be by exchange of old records in the stock of the dealer for new records. The implementation of this policy left much to be desired, however, because the new records sent out by Mercury were sent before the exchange records were received, such new records were billed to the open account of the dealer, just as had been the previous practice between them. When the exchange records were received, the dealer's account was credited with the returned records.

In May of 1958 the branch manager of Mercury went to the bankrupt's place of business just before closing time. He said that he wanted his stock back, as he had heard that the bankrupt was ceasing business. A large sign, prominently displayed, advertised a "going out of business" sale. The branch manager went into the bankrupt's store, removed every record which bore the Mercury label, and took them away. Mercury's branch manager had received no permission to do this. The records taken comprised one-third to one-half of the stock of bankrupt. They were taken without regard to whether they were listed as records to be returned in the "exchanges," with which the bankrupt had not complied. Mercury credited the bankrupt's account with the amount of $1,436.42, as the value of the records taken. Shortly thereafter the bankrupt went into bankruptcy.

Appellant urges three errors on the part of the district court:

(1) In finding that the transaction constituted a voidable preference;

(2) In finding that the defendant "converted" the property, and hence, in entering a monetary judgment; and

(3) In finding that there was no debt between the bankrupt and the appellant Mercury.

■ Appellant contends first that the transaction constituted a fair exchange of property and not a voidable preference. As appellant characterizes the transaction, the taking of the records was not the paying or securing of a pre-existing debt, but rather the completion of the "exchange" under the terms of which records had previously been delivered to the bankrupt. It seems clear that the mere exchange of property of equal value does not constitute a preference.

■■ The findings of the trial court do not support the characterization urged by appellant, however. The trial court found that it was not true that the records were shipped on condition that the exchange records be returned, nor that title was reserved in Mercury pending receipt of the exchange records from the bankrupt. The records were not shipped on consignment. The evidence indicates that the court's findings are well supported. For example, the bookkeeping of Mercury, where the shipments were debited to account as sent and returns credited as received, indicated that this transaction was a straight sale. Over a month had elapsed between the last shipment by Mercury and the taking of the records. This time lag is hardly consonant with the concept of direct exchange as espoused by appellant.

The trial court found the bankrupt was insolvent at the time of the alleged preference; that the transfer was within four months of the bankruptcy proceed-

ings; and that Mercury's agent had reasonable cause to believe that the debtor was insolvent. The findings and conclusion of the trial judge as to the existence of a voidable preference are sound, and well supported by the evidence, and we cannot disturb them.

Appellant next contends that in any event it should not have been ordered to pay a money judgment, but should have been ordered to return the records taken from the store. Section 60, sub. b of the Bankruptcy Act reads in part as follows:

> "Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property * *."

Appellant's contention is that it requires more to establish a conversion of the property under the Bankruptcy Act than under state law for conversion generally. Appellant relies primarily on Perkins v. Remillard, D.C.D.Mass.1949, 84 F.Supp. 224, where Judge Wyzanski held that the test intended by Congress when it changed the Bankruptcy Act to remove the unfettered choice of the trustee to take either money or goods and made conversion the test, was that the goods should be deemed "converted" when they have "been so dealt with that in advent of a final adverse judgment the preferee cannot return the identical property in substantially as good condition as when the bankrupt had it." Id. at page 227. Appellant cites a Harvard Law Review note approving the decision. Appellee does not cite cases which dispute this analysis of the law, though he refers to it as the minority view. The trial judge below seems to have taken this view of the law. But that does not dispose of the problem.

Some additional facts become important here. (1) The appellant did not segregate the records taken from the store, but mixed them with the other records in its stock. A list of the records taken was available, and it would have been possible to return records with similar numbers, although the actual records would have been different. At trial, appellant offered to the trustee the same exchange privilege which it offers to the dealers in general, in other words, the trustee could have taken any records from the current Mercury catalogue up to the value of the preference. Appellee disputes this as not having been a proper tender. (2) There is likewise some dispute as to the value of the records. Appellee urges that records are quickly depreciable in value, and that appellant gained the value of the records at their highest point by means of the preference, and should repay that amount. Appellant replies that there is no evidence of the depreciating nature of records in the record, and further that the offer to give the trustee exchange privileges cures any defects in this regard.

Even within the rule of law urged by the appellant, the trial judge's conclusion of conversion is supportable. Because it was impossible to return the precise same goods which comprised the preference, the strict language of the rule authorizes the value in place of the records.

Appellant finally contends that the trial judge should not have determined that there was no debt due and owing between the bankrupt and appellant. Finding No. VIII on page 16 of the Record reads in part as follows:

> "It is not true that after the exchange that there was still due and owing to the defendant from AUDIO FIDELITY, INC., the sum of Eighteen Hundred Six Dollars and Fifty-Three Cents ($1806.53) or any other sum."

This indebtedness was put in issue by the counterclaim of the appellants. It had to be disposed of in some way. But it is questionable whether the means chosen by the trial court is the proper one. The appellee offers only as justification that it is proper to condition a creditor's claim on the estate on the creditor's repayment of a preference. But this adjudication is not conditional.

It would seem that the proper method of disposing of the counterclaim of ap-

pellant would be to dismiss it without prejudice, rather than by making findings which might create a collateral estoppel against appellant in the bankruptcy proceedings.

We therefore do not modify or change the judgment rendered, but remand for the sole purpose of striking Finding VIII, and the re-entry of the same judgment, should such re-entry be necessary. In all other respects, the judgment is affirmed.